UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **CHAMBERS OF**<br>**CHARLES D. AUSTIN**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>**(410) 962-7810**<br>**MDD_CDAChambers@mdd.uscourts.gov** |

March 6, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Andre J. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
      Civil No. 23-2723-CDA

Dear Counsel:

On October 10, 2023, Plaintiff Andre J. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9) and the parties' filings[2] (ECFs 12, 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion and AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on May 29, 2020, and a Title XVI application for Supplemental Security Income ("SSI") benefits on August 10, 2020, alleging a disability onset of December 16, 2018. Tr. 95, 113. Plaintiff's claims were denied initially and on reconsideration. Tr. 166-71, 173-78. On December 22, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 43-93. Following the hearing, on April 10, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on October 10, 2023. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment, or in the alternative, a motion for remand. *See* ECF 12.

*Andre J. v. Dudek*
Civil No. 23-2723-CDA
March 6, 2025
Page 2

Security Act[3] during the relevant time frame. Tr. 14-42. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since December 16, 2018, the alleged onset date." Tr. 20. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "congestive heart failure/cardiomyopathy, epilepsy, spine disorder/degenerative disc disease/osteoarthritis, and anxiety." Tr. 20. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "substance addiction disorders, chronic pain syndrome, inflammatory arthritis/gout, asthma, diverticulosis, hypertension, pancreatitis, hepatic steatosis, hypomagnesemia/hypokalemia." Tr. 20. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 22. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: frequently able to climb ramps or stairs; never able to climb ladders, ropes, or scaffolds; occasionally able to knee, crouch, or crawl; frequently able to balance or stoop; should avoid work at unprotected heights or around dangerous moving machinery (i.e. forklifts); should avoid concentrated exposure to extreme cold or heat; should avoid concentrated exposure to vibration; should avoid work requiring commercial driving or operation of moving machinery (i.e. forklifts, etc.); able to understand and carry out simple instructions and routine, repetitive tasks; should avoid work requiring high-quota production-rate pace (i.e. rapid assembly line work where co-workers are side-by-side and the work of one affects the work of others); able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task, however time off task can be accommodated with normal breaks; occasionally able to change activities or

---

[3] 42 U.S.C. §§ 301 et seq.

> work settings during the workday without it being disruptive; occasionally able to deal with changes in a routine work setting; and able to have occasional interaction with supervisors, co-workers, and/or the general public.

Tr. 24-25.  The ALJ determined that Plaintiff was unable to perform past relevant work as a cashier (DOT[4] #211.462-014), sales clerk (DOT #290.477-014), and stock clerk (DOT #299.367-014), but could perform other jobs that existed in significant numbers in the national economy.  Tr. 34. Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 35.

### III.     LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.     ANALYSIS

Plaintiff raises three arguments on appeal.  First, Plaintiff contends that the ALJ did not afford proper weight to the opinion of Dr. Barouch.  ECF 12-1, at 19-22.  Second, Plaintiff argues that the ALJ "erroneously found the Plaintiff's gout and gastrointestinal issues to be non-severe impairments."  *Id.* at 22-24.  Third, Plaintiff argues that the ALJ's RFC presented to the vocational expert ("VE") is legally insufficient.  *Id.* at 24-28.  With respect to the third argument, Plaintiff contends that the ALJ's RFC fails to account for all of Plaintiff's substantiated physical and mental limitations regarding Plaintiff's (1) ability to perform light work, including his limited ability to stand, walk, or sit for prolonged periods of time, (2) need to elevate his legs, (3) need to use an assistive device at times due to his gout-related symptoms, and (4) time off-task and inability to consistently attend work.  *Id.*  Defendant counters that the ALJ properly evaluated Dr. Barouch's opinion, found Plaintiff's gout and gastrointestinal issues to be non-severe and continued to

---

[4] The "DOT" is the Dictionary of Occupational Titles.  "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

consider these impairments at later steps of the sequential evaluation, and crafted an RFC supported by substantial evidence and a proper narrative discussion. ECF 16, at 6-19.

### A. The ALJ properly evaluated Dr. Barouch's medical opinion.

For claims filed after March 27, 2017, an ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. § 404.1520c). The ALJ must "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions . . . in [a claimant's] case record." *Id.* (citing 20 C.F.R. § 404.1520c(b)). "Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions." *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ must "explain how [the ALJ] considered the supportability and consistency factors" when assessing a source's medical opinion. *Id.* "Supportability generally refers to 'the objective medical evidence and supporting explanations presented by a medical source.'" *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)). In assessing consistency, the ALJ looks to the degree of cohesion between the medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

Plaintiff contends that the ALJ, in assessing Dr. Barouch's opinion, did not sufficiently evaluate the supportability or consistency of the opinion "by cherry-picking evidence from the record highlighting [Plaintiff's] good moments[.]" ECF 12-1, at 20. Plaintiff asserts that "the ALJ conveniently ignored substantial and critical aspects of [Plaintiff's] medical treatment history in order to avoid having to adopt any of Dr. Barouch's limitations in his RFC finding." *Id.* at 21.

The ALJ considered the medical evidence of Dr. Barouch, who opined that Plaintiff "had frequent bathroom breaks from diuretics, stress worsened his symptoms, and he could walk 1 block without rest or severe pain, and stand/walk less than 2 hours and sit about 4 hours in an 8-hour workday." Tr. 31. Dr. Barouch opined that Plaintiff "required a job that permitted shifting positions at will from sitting, standing, or walking, would need more than 10 unscheduled breaks of 5 to 10 minutes during a workday (depending on the distance to the bathroom), should elevate his legs to hip height 50% of the time when sitting," as well as several postural and environmental limitations. Tr. 31-32. Dr. Barouch also opined that Plaintiff "would be off-task 25% or more of a workday, [and] would be absent more than 4 days per month[.]" Tr. 32.

The ALJ found Dr. Barouch's opinion to be "of limited persuasive value[.]" Tr. 32. In their supportability analysis, the ALJ found Dr. Barouch's opinion unsupported "by cardiology records noting [Plaintiff's] report he tried to walk a little bit for exercise every day, though he occasionally became dizzy." Tr. 32. The ALJ further found Dr. Barouch's limitations unsupported "by the evidence of [Plaintiff's] ejection fraction of 50% and his EKG showing normal sinus rhythm with no evidence of acute ischemia." Tr. 32. The ALJ also found that "[t]he limitation to elevating legs is not supported by the claimant's numerous findings of no peripheral/lower extremity edema." Tr. 32. In assessing consistency, the ALJ found Dr. Barouch's limitations inconsistent "with [Plaintiff's] normal neurological examination, finding intact cranial nerves,

normal upper and lower extremity strength, normal reflexes, intact sensation, accurate coordination, and a normal (though slightly wide based) gait and normal Romberg testing." Tr. 32. The ALJ also found Dr. Barouch's opinion inconsistent "with [Plaintiff's] reported activities of daily living[,]" noting that Plaintiff "wrote in his Function Report he prepared complete meals daily, did laundry one time per week, and shopped for maximum half an hour once per week." Tr. 32. As such, the ALJ found Dr. Barouch's opinion of limited persuasive value. Tr. 32.

Having articulated its views of both the supportability and consistency of Dr. Barouch's opinion, the ALJ's evaluation comports with the SSA's regulatory framework.[5] *See* 20 C.F.R. § 404.1520c. Plaintiff cites multiple portions of the transcript that he believes the ALJ failed to properly evaluate. *See* ECF 12-1, at 21-22. On the contrary, the ALJ assessed the exact evidence Plaintiff cites. The ALJ considered the objective medical evidence of Plaintiff's cardiac issues throughout their decision. Tr. 26-28, 30-32. An ALJ need not discuss every piece of evidence of record or follow a particular format in conducting their analysis. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Plaintiff disagrees with how the ALJ evaluated the persuasiveness of Dr. Barouch's opinion. But this Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Accordingly, the Court declines Plaintiff's invitation to engage in a *de novo* review of Dr. Barouch's opinion.

   B. The ALJ did not err at step two.

The ALJ properly deemed Plaintiff's gout and gastrointestinal issues to be non-severe impairments. "At step two of the five-step sequential evaluation, the ALJ determines if the claimant has an impairment, or a combination of impairments, that is severe and meets the duration requirement." *Sharon W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2707, 2019 WL 2234499, at *1 (D. Md. May 23, 2019). An impairment is "severe" if it "significantly limit[s the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). If the ALJ finds any impairment to be severe, "the ALJ continues with the sequential evaluation and considers how each of the claimant's impairments impacts her ability to perform work." *Sharon W.*, 2019 WL 2234499, at *1. In formulating a claimant's RFC, the ALJ "consider[s] all of [the

---

[5] In passing, Plaintiff faults the ALJ for failing "to address factors three, four, and five in 20 C.F.R. § 416.920c(c) and § 404.1520c(c)." ECF 12-1, at 22. For claims filed after March 27, 2017, an ALJ is not required to evaluate each factor. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Because the ALJ assessed the supportability and consistency of the medical opinions and an ALJ's consideration of the remaining factors in 20 C.F.R. §§ 404.1520c(c), 416.920c(c) is discretionary, the Court detects no error in the ALJ's decision whether to consider these factors. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (explaining that an ALJ "may, but [is] not required to," consider the factors in 20 C.F.R. § 404.1520c(3)-(5) and § 416.920c(3)-(5) in assessing medical opinions).

claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe'[.]" 20 C.F.R § 404.1545(a)(2); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(a)(2), 416.945(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (italics omitted) (recognizing that step two of the sequential evaluation process is "merely a threshold determination meant to screen out weak claims" and is "not meant to identify the impairments that should be taken into account when determining the RFC").

Despite Plaintiff's contention, the ALJ supported their step-two analysis of Plaintiff's gout and gastrointestinal issues with substantial evidence. As to Plaintiff's gout, the ALJ concluded that Plaintiff's "gout caused mild symptoms and limitations and is not a severe impairment." Tr. 21. The ALJ supported this conclusion when discussing Plaintiff's treatment for gout. *Id*. The ALJ observed that February 2019 records "included a diagnosis of gouty arthritis in the right foot/toe with elevated serum uric acid levels," and that later in 2019, Plaintiff "had some left knee pain but no redness and minimal swelling; he was directed to increase his gout medication until resolved." *Id*. Plaintiff "was observed to have knee and foot pain/tenderness due to gout, with some swelling and edema," but the ALJ observed that other records "noted his gout was stable." *Id*. Plaintiff "was assessed with joint pain and gout in October 2021, though he had not been on his medication." *Id*. Plaintiff also "had right knee effusion and was assessed with acute gout in April and May 2022; he was started on medication and underwent knee aspirations." *Id*. The ALJ noted that "[a] right knee MRI showed a partial tear involving the patellar tendon and findings compatible with tophaceous gout foci," and that Plaintiff "began physical therapy for the right knee." Tr. 29. The ALJ acknowledged that Plaintiff "testified to constant gout pain in knee, though it was worse when it flared[,] and he had flares about 3 times a month." Tr. 21. Plaintiff also testified that "he took daily medication for gout and his gout flares were affected by his diet." *Id*. The ALJ found that "[r]ecords noted gout could be managed with dietary restriction of alcohol and certain foods." *Id*.

As to Plaintiff's gastrointestinal issues, the ALJ determined that Plaintiff's "diverticulitis with digestive issues and abdominal pain did not significantly limit [his] ability to perform basic work activities and is not a severe impairment." Tr. 20. The ALJ supported this conclusion by examining the objective evidence of Plaintiff's gastrointestinal issues. *Id*. The ALJ acknowledged that Plaintiff "testified to digestive issues, nausea, and vomiting." *Id*. In January 2019, Plaintiff "presented . . . with vomiting, nausea and abdominal pain," and "[b]y February 2019, his right upper quadrant pain was intermittent and he reported he continued to drink a pint of alcohol a day." *Id*. In September 2019, Plaintiff "was treated for vomiting and epigastric pain after having drank one-half to three-fourths of a pint of vodka the night before." Tr. 27. Plaintiff's "provider noted his alcohol use would increase the risk of liver disease and inflamed liver pain." Tr. 20. The ALJ noted that "[a]bdominal CTs showed extensive colonic diverticulosis without definite evidence of acute diverticulitis," and that "additional imaging showed probable enterocolitis and probable gastritis." *Id*. Plaintiff "had episodes of abdominal tenderness." *Id*. The ALJ observed that "[a]n EGD and colonoscopy found gastritis, mild esophagitis, two colon polyps, pan-diverticulitis, and

*Andre J. v. Dudek*
Civil No. 23-2723-CDA
March 6, 2025
Page 7

internal hemorrhoids." *Id*. Plaintiff "was diagnosed with chronic colitis." *Id*. Plaintiff "was treated for a change in bowel habits with frequent, small, bowel movements," and "[h]is reflux esophagitis was treated with medication." *Id*.

The Court finds that the ALJ adequately explained why Plaintiff's gout and gastrointestinal issues had no more than a minimal effect on his work-related functioning and are therefore non-severe. *See* SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985) ("[A]n impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability to do basic work activities[.]"). The analysis detailed the evidence considered and the ALJ's determinations based on that evidence. Thus, the ALJ did not err at step two.

Plaintiff also argues that the ALJ's RFC "fails to cure the step two error in as much as it fails to adequately account for [Plaintiff's] limitations resulting from his gout and digestive issues, including his need for an assistive device; inability to stand or walk for long periods of time; and his inability to focus, concentrate, or attend work on a regular basis." ECF 12-1, at 24. Having found no error at step two, and because Plaintiff does not present any evidence otherwise, the Court does not need to address this argument. *See David P. v. Kijakazi*, No. BAH-22-2745, 2023 WL 5984169, *3, n.5 (D. Md. Sept. 14, 2023) (finding no error at step two, therefore not proceeding with Plaintiff's argument regarding the RFC).

        C. <u>Substantial evidence supports the ALJ's RFC.</u>

A careful review of the ALJ's decision demonstrates the RFC determination rests on ample substantial evidence. A claimant's RFC is "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). An RFC assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. §§ 404.1545(b) and 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work." 20 C.F.R. §§ 404.1545(b), 416.945(b); *see* SSR 96-8p, 1996 WL 374184, at *5.

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work of which the ALJ believes the claimant to be capable. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (holding that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested'") (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" SSR 96-8p, 1996 WL 374184, at *7. Thus, an ALJ must

*Andre J. v. Dudek*
Civil No. 23-2723-CDA
March 6, 2025
Page 8

identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Plaintiff argues that the "ALJ's finding that [he] is capable of performing work at the light exertional level is completely inconsistent with the evidence[,]" asserting that "[t]he evidence here clearly supports a less-than-sedentary RFC." ECF 12-1, at 25-26. Plaintiff insists that the "significant symptoms related to his gout/gouty arthropathy, severe chronic heart failure/cardiomyopathy, hypertension, lumbar spine degenerative disc disease and spondylosis, and chronic pain syndrome . . . significantly limit his ability to stand, walk, or sit for prolonged periods of time." *Id.* However, the ALJ engaged in a narrative discussion of Plaintiff's medical evidence spanning ten pages and citing to specific evidence in the record. Tr. 24-33. The ALJ offered a logical explanation of how this evidence, along with Plaintiff's testimony, and the opinions of medical professionals, led to the conclusion that Plaintiff can perform light work with certain physical and mental limitations. Tr. 24-25, 33.

Relevant to Plaintiff's "less-than-sedentary RFC" suggestion, the ALJ discussed Plaintiff's ability to stand, walk, and sit during the workday. For example, the ALJ considered Plaintiff's testimony that he "could not stand or sit for long periods[,]" and that he could "stand for 15 to 20 minutes, sit for 10 minutes before needing to stretch, [and] walk half a block before needing a break." Tr. 25. They also acknowledged that Plaintiff "testified to dizziness and shortness of breath with walking." *Id*. The ALJ observed that while Plaintiff had many presentations to the emergency room due to his impairments, "there is evidence of noncompliance with seizure medication and notes from providers that his seizures could be from his alcohol use." Tr. 31. The ALJ considered that Plaintiff's "ejection fraction ha[d] improved to 50% and his cardiologist indicated his ongoing chest pain was not likely to be cardiac in nature." *Id*. The ALJ observed that "[d]espite some findings of trace edema, [Plaintiff] generally had no peripheral edema." *Id*. The ALJ noted that Plaintiff "had normal extremity strength and generally normal sensation." *Id*. The ALJ also found generally persuasive the opinions of Drs. A. Serpick and M. Sendek, the state agency experts who opined that Plaintiff "could perform light work (lifting and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently, standing and/or walking 6 hours and sitting 6 hours in an 8-hour workday)." Tr. 32-33.

The ALJ further found that the RFC supported by Plaintiff's "history of seizures, congestive heart failure, osteoarthritis, and lumbar and cervical degenerative disc disease with reports of chest pain," as well as "findings of decreased ejection fraction, diffuse polyarthralgia with tenderness, decreased knee range of motion, trace gross pedal edema, some findings of an unsteady gait, and treatment with medial branch blocks, radiofrequency ablations, and pain medication." Tr. 33. The ALJ noted that Plaintiff's RFC was "consistent with the evidence of improved ejection fraction, no thoracic or lumbar tenderness, no lower extremity edema, normal upper and lower extremity strength, normal reflexes, no pronator drift, intact sensation, accurate coordination, and a normal (though slightly wide based) gait and normal Romberg testing[,]" and the fact that Plaintiff "was noted to ambulate household distances independently without a device and he was independent with activities of daily living." *Id*.

The objective medical evidence articulated by the ALJ supported their conclusion that Plaintiff's hearing testimony "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 26. The Fourth Circuit has held that "[a]lthough a claimant's allegations about [their] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers[.]" *Craig*, 76 F.3d at 595; *see also Gross v. Heckler*, 785 F.2d 1163, 1165-66 (4th Cir.1986) (finding the claimant's claim that he was disabled not credible when "[h]is arthritis responded to conservative treatment, and his stomach pains were relieved by antacids. If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Plaintiff's disagreement with the ALJ's conclusions cannot displace such conclusions when they are, as here, supported by substantial evidence. Moreover, Plaintiff does not identify any relevant medical records or testimony that the ALJ failed to consider or that the ALJ failed to resolve any evidentiary contradictions. Plaintiff's argument again amounts to a request to reweigh evidence and, once again, must fail.

D. The ALJ did not err by excluding from the RFC Plaintiff's need to elevate his legs.

Next, Plaintiff argues that the RFC "fails to account for [Plaintiff's] need to elevate his legs throughout the day due to his swelling and edema related to his chronic heart failure and gout/gouty arthropathy." ECF 12-1, at 26. Plaintiff asserts that "treatment records, [Plaintiff's] hearing testimony, and Dr. Barouch's opinion support [his] need to elevate his legs at hip height when seated." *Id.* The Court finds this argument unavailing. Here, the ALJ found Dr. Barouch's opined limitation that Plaintiff "should elevate his legs to hip height 50% of the time when sitting," unsupported "by [Plaintiff's] numerous findings of no peripheral/lower extremity edema." Tr. 32.

"The RFC determination is an issue ultimately reserved for the ALJ." *Geraldine S. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-3447, 2019 WL 3935376, at *1 (D. Md. Aug. 20, 2019); *see Jones v. Saul*, No. 20-0437, 2021 WL 1015821, at *14 (S.D.W. Va. Feb. 23, 2021), *report and recommendation adopted*, No. 20-0437, 2021 WL 1015896 (S.D.W. Va. Mar. 16, 2021) (citing 20 C.F.R. § 404.1546(c) ("to the extent that [c]laimant contends the ALJ did not adopt an RFC assessment endorsed by his treating physicians. . . , it is also clear that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner."). An ALJ's RFC determination must be based "on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). As explained above, the ALJ evaluated Dr. Barouch's opinion, using the proper framework; found her opinion "of limited persuasive value;" and rejected Dr. Barouch's opined limitation regarding Plaintiff's leg elevation as unsupported by the objective evidence. Tr. 31-32. Even if the ALJ had found this portion of Dr. Barouch's opinion persuasive, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight." *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014); *see Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement

*Andre J. v. Dudek*
Civil No. 23-2723-CDA
March 6, 2025
Page 10

that an ALJ adopt a [source's] opinions verbatim; nor is the ALJ required to adopt the [source's] limitations wholesale.").

Plaintiff further argues that the ALJ ignored "findings of swelling and edema in [his] lower extremities on physical examination and imaging reports," and cites to multiple parts of the transcript that he believes the ALJ failed to properly consider. ECF 12-1, at 26. However, the ALJ did in fact assess the exact evidence Plaintiff cites. To be sure, the ALJ thoroughly discussed the objective evidence of Plaintiff's swelling and edema and concluded that despite some findings of trace edema, Plaintiff generally had no lower extremity/peripheral edema. Tr. 21, 26-33, 35. After discussing the evidence, the ALJ found Plaintiff capable of performing light work as supported by Plaintiff's "findings of . . . trace gross pedal edema," and "consistent with the evidence of . . . no lower extremity edema[.]" Tr. 33. Plaintiff identifies no unresolved evidentiary conflicts or factual conclusions that could not be accepted by a reasoning mind. For a third time, Plaintiff seeks reweighing of evidence, which the Court will not do.

  E. <u>The ALJ did not err by excluding from the RFC the use of an assistive device for ambulation.</u>

Plaintiff argues that the RFC does not account for his "need to use an assistive device for ambulation at times," asserting that he "has been prescribed a rolling walker and also advised to use crutches due to his gout." ECF 12-1, at 26-27. Here, the ALJ acknowledged Plaintiff's testimony that he used crutches consistently and a walker about three times a week due to his gout and balance problems. Tr. 25-26. However, the ALJ found that "a walker/crutches or other assistive device [was] not medically necessary." Tr. 31. The ALJ supported this conclusion by observing that Plaintiff used crutches during "a bout of right foot gout" and a walker during hospitalizations, but that Plaintiff "was also noted to have a steady gait and to be independent in ambulating at home." *Id*. The ALJ noted that some records indicated an unsteady gait but that Plaintiff "was not observed to use assistive devices at other appointments." *Id*. The ALJ also observed that Plaintiff "ambulate[d] household distances independently without a device." Tr. 33. Plaintiff does not identify any relevant medical records or testimony that the ALJ failed to consider. For a fourth time, the Court rejects the argument to reweigh evidence.

  F. <u>The ALJ did not err by excluding from the RFC time off-task and inability to consistently attend work.</u>

Plaintiff argues that the "RFC fails to adequately account for [his] time off task and inability to attend work on a consistent basis." ECF 12-1, at 27. Specifically, Plaintiff avers that his "chronic and severe symptoms, including his anxiety, seizures, shortness of breath, lightheadedness, dizziness, nausea, vomiting, frequent need to use the bathroom, swelling, and chronic pain[] would . . . cause him to be off task at times . . . well beyond the time period allowed for normal breaks," and further that his symptoms and inpatient hospitalizations would cause him to miss work. *Id.* at 28. The Court rejects this argument.

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20

C.F.R.] § 404.1520a(c)(3]." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121-22. However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

Here, at step three, the ALJ concluded Plaintiff had a moderate CPP limitation. Tr. 24. Relevant to Plaintiff's CPP limitation, the RFC states Plaintiff is "able to understand and carry out simple instructions and routine, repetitive tasks[,]" and "should avoid work requiring high-quota production-rate pace (i.e. rapid assembly line work where co-workers are side-by-side and the work of one affects the work of others)[.]" Tr. 25. The RFC also finds that Plaintiff is "able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task, however time off task can be accommodated with normal breaks[.]" *Id.*

Plaintiff is correct in noting that the RFC does not adequately accommodate his CPP limitation by accommodating time off-task with normal breaks. ECF 12-1, at 27-28. The Court has recognized that such a limitation alone is insufficient to account for moderate CPP limitations because normal breaks are customary even for workers without CPP limitations. *See Richardson v. Berryhill*, No. TJS-17-1523, 2018 WL 11474067, at *3 (D. Md. June 25, 2018) ("The ALJ's finding that [claimant] can perform work in two-hour increments with normal breaks does not adequately account for [his] ability to concentrate and stay on task."); *Ludlow v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-3044, 2016 WL 4466790, at *2 (D. Md. Aug. 23, 2016) (noting that an ALJ's "restriction to working in 2-hour intervals does not adequately account for a moderate limitation in the ability to stay on task, absent further explanation," and "does not account for any breaks in addition to those encompassed by a normal workday"); *see id.* (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996) for the proposition that "a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

Had this provision been the only limitation in the RFC accounting for Plaintiff's CPP difficulties, Plaintiff's challenge may have succeeded. But such is not the case here. While the RFC did not adequately account for Plaintiff's moderate CPP difficulties by accommodating for

time off task with normal breaks, the RFC *did* account for Plaintiff's CPP issues by precluding him from performing "work requiring high-quota production-rate pace (i.e. rapid assembly line work where co-workers are side-by-side and the work of one affects the work of others)." Tr. 25. The Court has previously held that this restriction adequately accounts for a claimant's moderate CPP limitation. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (holding that the ALJ accounts for Plaintiff's moderate CPP limitations when limiting Plaintiff to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Additionally, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016). Moreover, Plaintiff fails to identify any evidence that the ALJ failed to review. Yet again, Plaintiff disagrees with how the ALJ considered the evidence related to his physical and mental limitations. And yet again, the Court rejects Plaintiff's request to reweigh evidence.

### G. The ALJ's RFC presented to the VE is sufficient.

Plaintiff's final argument contends that the VE's testimony regarding additional limitations at the sedentary level, the need for leg elevation during the workday, the need to use crutches for ambulation to and from the workstation, off-task time, and unscheduled absences and breaks should have been incorporated into the RFC. ECF 12-1, at 26-28; *see* Tr. 85-90. Even though the ALJ contemplated additional limitations at the sedentary level, the need to use crutches for ambulation, off-task time, and unscheduled absences, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *David R. v. Comm'r of Soc. Sec.*, No. 22-0088, 2022 WL 17362156, at *7 (S.D. Ohio Nov. 30, 2022) (quoting *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014)).

Even though Plaintiff's attorney posed various hypotheticals to the VE regarding unscheduled breaks and a leg elevation limitation, an ALJ is not required to adopt the VE's suggested limitations. *See France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)) ("[A]n ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel, even though these considerations are more restrictive than those suggested by the ALJ."). Indeed, the ALJ, in their decision, explicitly rejected hypothetical questions from Plaintiff's attorney regarding "elevating legs and requiring five unscheduled breaks of ten minutes each in addition to regular breaks,"

*Andre J. v. Dudek*
Civil No. 23-2723-CDA
March 6, 2025
Page 13

concluding that the objective medical evidence did not support these limitations. Tr. 35. Specifically, the ALJ observed that Plaintiff "had some findings of edema, but was generally found to have no lower extremity/peripheral edema, therefore the evidence does not support a limitation to elevate the legs." *Id*. The ALJ further found that "the medical evidence of record does not support a limitation to additional unscheduled breaks." *Id*. As such, the ALJ did not err by failing to incorporate the VE's testimony of these limitations into the RFC.

### V.     CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 12, is DENIED and Plaintiff's alternative motion for remand, ECF 12, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge